## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JACOB MITCHELL B., | Case No.  1:20-CV-00534-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Pending is Petitioner Jacob Mitchell B.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 17) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits. *See* Pet. for Rev. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a twenty-three-year-old man with a long-standing history of epilepsy, neurocognitive disorder, attention deficit/hyperactivity disorder, learning disorder, depression, and anxiety. AR 16. On December 19, 2017, Petitioner filed an application for supplemental security income ("SSI"). AR 13. On January 22, 2018, while this claim was pending, Petitioner

**MEMORANDUM DECISION AND ORDER - 1**

filed an application for child's insurance benefits.[1]  *Id.*  In both applications, Petitioner alleged a disability onset date of November 1, 2002, when he was three years old.  AR 13.  Petitioner later amended this date to January 11, 2017, after he turned eighteen.  *Id.*

Both claims were denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ").  *Id.*  On January 30, 2020, the claim went to a hearing before ALJ David Willis.  *Id.*  On March 20, 2020, the ALJ issued a decision that was unfavorable to Petitioner.  AR 10-25.

Petitioner appealed this decision to the Appeals Council.  The Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.  AR 1-6.

Having exhausted his administrative remedies, Petitioner filed this case.  Petitioner raises three points of error.[2]  First, Petitioner argues that the ALJ erred in rejecting the opinions of his treating and evaluating providers – Amy Latta, Ph.D., Cheryl A. Daniel, Ed.S., and Certified Physician's Assistant Jessica Bishop – and instead relying on the opinions of the reviewing medical consultants.   Pt.'s Br. at 5-14, 19-20 (Dkt. 17).  Second, Petitioner contends that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony.  *Id.* at 14-17.  Third, Petitioner maintains that the ALJ improperly rejected the testimony of his mother without providing germane reasons for the rejection.  *Id.* at 17-19.

---

[1] Petitioner's mother is on disability.  AR 50, 64.  The dependent, unmarried, adult children of individuals entitled to disability benefits are entitled to "child's benefits" if they can show that they have a disability that began before they became twenty-two years old.  20 C.F.R. § 404.350(a).

[2] Petitioner organizes his arguments into four sections.  Pt.'s Br. at 5 (Dkt. 17).  As Respondent correctly points out, however, Petitioner's fourth argument is nothing more than a restatement of his first argument.  *See id.* at 5-14, 19-20; *see also* Pt.'s Reply at 8-9 (Dkt. 25).

**MEMORANDUM DECISION AND ORDER - 2**

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ.  *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Treichler*, 775 F.3d at 1098.  Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig*, 681 F.3d at 1051.  In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098.  Considerable

**MEMORANDUM DECISION AND ORDER - 3**

weight is given to the ALJ's construction of the Social Security Act.  *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009).  However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.[3]

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is work activity that is both substantial and gainful.  20 C.F.R. §§ 404.1572, 416.972.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

---

[3] The same definition of "disability" and five-step sequential evaluation that govern eligibility for social security disability income ("SSDI") and supplemental security income ("SSI") govern eligibility for disabled child's insurance benefits. *See* 42 U.S.C. §§ 402(d) and 423(d); 20 C.F.R. § 404.1520(a)(1)-(2).

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities.  20 C.F.R.

§§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it

does not significantly limit the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable

impairment or combination of impairments, disability benefits are denied.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds

to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's

residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.

20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do

physical and mental work activities on a sustained basis despite limitations from her

impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she

performed within the last 15 years, or 15 years prior to the date that disability must be

established, if the work was substantial gainful activity and lasted long enough for the claimant

to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ's FINDINGS

The ALJ found that Petitioner suffers from the following severe impairments: epilepsy, neurocognitive disorder, attention deficit/hyperactivity disorder, learning disorder, depression, and anxiety.  AR 16.  The ALJ determined that these impairments affect Petitioner's ability to engage in work-related activities in a variety of manners, including that Petitioner can never climb ladders, ropes, or scaffolds; cannot engage in work involving unprotected heights, moving mechanical parts, or the operation of a motor vehicle; can only engage in incidental contact with co-workers; and should never interact with the public.  AR 18-19.  The ALJ also determined that Petitioner's impairments limit him to performing "simple, routine, repetitive tasks involving simple work-related decisions."  AR 18.  Petitioner has no past relevant work.  AR 24.  Based on the testimony of a vocational expert, the ALJ concluded that Petitioner's limitations would not prevent him from performing a range of work, including working as a laundry worker, an office cleaner, or a clothing pressor.  AR 24-25.  The ALJ, therefore, found that Petitioner was not disabled.  AR 25.

**MEMORANDUM DECISION AND ORDER - 6**

## DISCUSSION

I. Petitioner's Epilepsy

Petitioner was first diagnosed with epilepsy at the age of three or four, after he had a febrile seizure requiring hospitalization.  AR 38, 538, 813, 861.  Throughout the course of his life, the frequency, nature, and severity of Petitioner's seizure activity has varied.  AR 861.  One of the key issues facing the ALJ in this case, therefore, was assessing the impact of Petitioner's epilepsy during the period of alleged disability.

The ALJ was presented with a variety of evidence regarding this issue, including the testimony of Petitioner and his mother, Petitioner's medical records, and a medical opinion from one of the providers who had treated Petitioner's epilepsy for years, Certified Physician's Assistant (PA-C) Jessica Bishop.  AR 20, 38-41, 52-55, 881-884.  PA-C Bishop works at Idaho Comprehensive Epilepsy Center alongside Petitioner's treating neurologist Dr. Robert T. Wechsler.  AR 861.

Relevant here, Petitioner and his mother both indicated that Petitioner was experiencing a debilitating and significant amount of seizure activity throughout his adulthood.  In June 2018, for example, Petitioner completed a seizure questionnaire estimating that he experiences one to two "full" seizures every three months and three to five partial seizures per month.  AR 352.  Petitioner explained that this seizure activity is characterized by disorientation, loss of hearing, blurred vision, and loss of memory.  AR 354.  After his seizures, Petitioner experiences headaches, depression, and memory loss.  *Id.*  Petitioner's mother corroborated Petitioner's reports, observing that Petitioner "has frequent partial seizures that affect talking/hearing/seeing."  AR 348; *see also* AR 351 (describing Petitioner as having weekly partial seizures and clusters of seizures).

**MEMORANDUM DECISION AND ORDER - 7**

A year and a half later, at the disability hearing, Petitioner testified that he was continuing to have smaller seizures approximately 15 to 30 times per year with bigger seizures occurring at a ratio of 1:5 to the smaller seizures.  AR 40.  This calculates to about three to six big seizures per year.  Petitioner's mother agreed with this calculation in part, observing that Petitioner was having one "big" seizure, where he "goes fully unconscious," "every two months or so."  AR 52. She estimated, however, that Petitioner was having smaller seizures more than once a week, which was more consistent with Petitioner's earlier seizure report than the numbers that he quoted on the spot at the disability hearing.  AR 53.

Finally, one of the providers responsible for treating Petitioner's epilepsy – PA-C Bishop – provided her own assessment of the frequency and severity of Petitioner's seizure activity.  AR 881-884.  PA-C Bishop confirmed that Petitioner was regularly experiencing the type of seizures that would interrupt work activity.  AR 881 (reporting that Petitioner's seizure activity varies, with an average of 3-4 seizures per month).  As a result of this condition, PA-C Bishop calculated that Petitioner would likely need to be absent from work more than three times a month.  AR 884.  PA-C Bishop noted that these opinions were based on her assessment that Petitioner's epilepsy was "not currently controlled."  AR 882.  PA-C Bishop indicated, however, that Petitioner may retain the ability to work full-time, doing low stress work, should his seizures ever become "controlled."  AR 881-882.

The ALJ rejected this evidence, finding Petitioner's statements about the intensity, persistence, and frequency of his seizures unreliable and rejecting PA-C Bishop's opinion as unpersuasive.  AR 20, 23.  While these determinations are subject to different standards of review on appeal, they share a factual and legal core.

**MEMORANDUM DECISION AND ORDER - 8**

The central reason the ALJ provided for finding Petitioner's epilepsy was not disabling, contrary to his testimony, his mother's testimony, and the opinion of PA-C Bishop, was that (i) the times when Petitioner has experienced increased seizure activity are correlated "with non-adherence to medications and/or sleep deprivation" and (ii) the medical record as a whole suggests that Petitioner's "epilepsy can be reasonably well controlled by adhering to prescribed medication therapy and engaging in proper sleep hygiene." AR 20. In other words, the ALJ determined that Petitioner would not experience a debilitating level of seizures if he were compliant with treatment. *Id.*

Having considered the evidence cited by the ALJ as well as Petitioner's competing arguments, the Court concludes that the above findings are supported by substantial evidence and are a reasonable reading of the record. *See* AR 20; AR 39 (acknowledging that his bigger seizures are commonly triggered by "fasting on medication"); AR 49; AR 429 (Petitioner does not have good sleep habits and medication compliance is an issue); AR 551 (Petitioner experienced a seizure after failing to take his medication), AR 555 (Petitioner has increased seizures "as a result of medication nonadherence"); AR 563 (after Petitioner experienced a cluster of complex seizures needing treatment, his mother reported that he is supposed to take medication twice daily, but will usually sleep through his morning dose); AR 745-746 (Petitioner continuing to have "not great adherence" as of January 2018 and experiencing seizures; Petitioner's neurologist advises that he needs to take more responsibility for taking his medications); AR 748 (Petitioner had a complex partial seizure secondary to missed medication and irregular sleep schedule); AR 800 (Petitioner experienced "dramatic improvement" in seizure control when medication compliant); AR 862 (most of Petitioner's bigger seizure events are "provoked by non-adherence"); AR 867 (Petitioner having seizures, some of which were

**MEMORANDUM DECISION AND ORDER - 9**

provoked by "sleep deprivation as he can be up for over 24 hours at a time"); AR 870 (Petitioner continuing to have "provoked" seizures, including a larger event after he stayed awake for almost three days).

The Court agrees with Petitioner, however, that the adverse credibility inferences that the ALJ drew from these findings are not rational and are not a proper basis for denying disability benefits. This is because the ALJ's findings about the number and severity of Petitioner's seizure focus on a *hypothetical* world where Petitioner is compliant with treatment. AR 20. Such findings standing alone cannot answer whether Petitioner's epilepsy is disabling. Determining how Petitioner's seizure activity impacted his ability to work requires a consideration of how often Petitioner actually had seizures during the period of disability and whether Petitioner was ever compliant, for an extended period, with all necessary treatment recommendations. But the ALJ never made any explicit findings regarding these issues. In focusing on evidence indicating that Petitioner *could* better control his seizure disorder, the ALJ glossed over the facts on the ground. This led the ALJ into error.

*a. The ALJ's Rejection of Petitioner's Testimony*

Where, as here, the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged" and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (internal citations omitted).

Failure to comply with a prescribed medication regime can constitute such a reason. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained failure .

**MEMORANDUM DECISION AND ORDER - 10**

. . to follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's

. . . testimony"); *see also* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at * 9

(October 25, 2017).  An ALJ, however, cannot discredit testimony on this ground without first

analyzing any reasons given by the claimant for his non-compliance.  *See Orn v. Astrue*, 495

F.3d 625, 638 (9th Cir. 2007).  As SSR 16-3p provides:

> [I]f the individual fails to follow prescribed treatment that might improve
> symptoms, we may find the alleged intensity and persistence of an individual's
> symptoms are inconsistent with the overall evidence of record. We will not find
> an individual's symptoms inconsistent with the evidence in the record on this
> basis without considering possible reasons he or she may not comply with
> treatment or seek treatment consistent with the degree of his or her complaints.

SSR 16-3p, 2017 WL 5180304, at * 9.  The ALJ failed to comply with these requirements.

Specifically, the ALJ rejected Petitioner's claims about the frequency and severity of his seizure

activity exclusively based on a finding that Petitioner's epilepsy *could be* controlled with

treatment, without assessing (i) whether Petitioner, in fact, had achieved control over his epilepsy

through consistent adherence to his treatment regime and (ii) if not, whether Petitioner had a

good reason for his lack of treatment compliance.  AR 20.

　　　　The Court agrees with Petitioner that this oversight was not harmless.  To the extent the

ALJ's adverse credibility findings are grounded in a silent belief that Petitioner's epilepsy

became "well controlled" during the period of alleged disability, as Respondent suggests, this

finding is not supported by substantial evidence.  The majority of the evidence the ALJ cites to

show that Petitioner's epilepsy was treatable are records documenting times when Petitioner

experienced provoked seizures after skipping medication or failing to sleep.  AR 20 (citing AR

551, 555, 563, 745-746, 748, 867, 870).  Respondent emphasizes one record, from April 19,

2018, where Petitioner's provider noted "dramatic improvement in seizure control" with

medication compliance.  Res.'s Br. at 5 (Dkt. 22).  But this same record indicates that Petitioner

**MEMORANDUM DECISION AND ORDER - 11**

had a recent seizure provoked by sleep deprivation.  AR 800.  Moreover, multiple records before

and after this record indicate ongoing issues with seizure control, provoked seizures, medication

management, and sleep.  AR 429, 551, 563, 745-746, 748; *see also* AR 870 (between November

2018 and December 2018, Petitioner reported two focal onset seizures, but acknowledged that

they were provoked); AR 867 (between December 2018 and March 2019, Petitioner had three to

five focal onset seizures with loss of awareness and one possible bilateral tonic-clonic seizure,

some provoked by sleep deprivation after he was up for more than 24 hours; Petitioner also

reported sometimes forgetting his morning dose of medication and making it up later); AR 862

(between April 2019 and July 2019, Petitioner had one tonic-clonic seizure, five focal onset

seizures with loss of awareness, and four focal onset seizures with maintained awareness).  These

records and Petitioner's own testimony indicate that while Petitioner's medication compliance

may have partially improved, he was still having a significant number of seizures, including

"provoked" seizures up until the disability hearing.  *Id.*; *see also* AR 39.  In other words, the

medical record does not conflict with Petitioner's testimony about the continuing frequency and

severity of his seizures as Respondent claims.[4]  This cannot be the implicit basis, therefore, for

the ALJ to have ignored the strictures of SSR 16-3p.

---

[4] The Court recognizes that Petitioner has mostly had normal electroencephalogram ("EEG") results.  AR 20.  For example, when he underwent multi-day epilepsy monitoring in October 2018, despite "all provocative measures," Petitioner only had two mild subjective events without EEG correlates.  AR 873.  The ALJ noted these facts when summarizing Petitioner's treatment history, but did not draw any inferences from them one way or another.  AR 20.  The Court declines Respondent's invitation to jump to the conclusion that these studies disprove or "diminish" Petitioner's reports about his seizures.  Res.'s Br. at 5, 10 (Dkt. 22).  The Court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009).  Here, the ALJ did not make a finding that the EEG results undermined Petitioner's testimony and the ALJ's synopsis of these results does not highlight such an obvious conflict that the Court can impute such reasoning to the ALJ without engaging in improper guesswork.  As the medical record warns, normal EEG

Nor can the Court be confident that the outcome of this case would be the same had the ALJ followed the rules outlined in SSR 16-3p.  The Ninth Circuit has repeatedly cautioned ALJs against faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance.  *See, e.g.*, *Garrison*, 759 F.3d at 1023 n. 24 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

In this case, it is well-documented that Petitioner suffers from long-standing depression and other neurocognitive issues.  For instance, Petitioner has proven slowing of and scarring to the left side of brain (mesial temporal sclerosis), likely caused by Petitioner's history of childhood seizures.  AR 20, 426, 538, 823, 830, 882, 862.  These changes to Petitioner's brain have resulted in a neurocognitive disorder.  AR 20 and 394; *see also* AR 543 (explaining that "many forms of epilepsy are associated with global cognitive impairments, especially in persons with earlier seizure onset" and opining that Petitioner's left temporal lobe scarring may have contributed to his cognitive impairments); AR 557 (Petitioner's epilepsy and brain scarring appear to have resulted in "gradual erosion" in his competency); and AR 826 (low test cognitive test scores may be due to Petitioner's seizure disorder).

Petitioner also has a long-standing history of depression, potentially related to, or at the very least complicated by, his epilepsy and epilepsy treatment.  AR 478 (discussing the interaction between Petitioner's epilepsy and his anhedonia, hopelessness, and worsening depression); AR 557 (same); AR 489 (Petitioner suffering from "severe" depression and struggling to make it through school); AR 539 (Petitioner began experiencing symptoms of

---

findings do not exclude a diagnosis of epilepsy.  AR 589, 649.  Petitioner's brain scans, while rarely capturing active seizure activity, reveal brain changes associated with a seizure disorder. AR 832, 873.  Indeed, the doctors who treated Petitioner's epilepsy continued to diagnose him with "intractable focal epilepsy, with dyscognitive seizures" after reviewing the EEG monitoring.  AR 873.

MEMORANDUM DECISION AND ORDER - 13

depression in early childhood after starting medications for epilepsy); AR 543 (Petitioner's epilepsy may contribute "to his depression/anxiety symptoms"); AR 426 (after starting treatment for his epilepsy, Petitioner developed "significant psychiatric comorbidity"); AR 848 (Petitioner experiencing worsening depression secondary to worsening seizure activity).

Consistent with this evidence, the ALJ found that Petitioner's neurocognitive deficits and his depression constituted severe mental impairments, which seriously restrict his ability to engage in work activities.  AR 16, 20-21.  Because these conditions are one obvious and possible reason for Petitioner's non-adherence to his neurologist's recommendations, the ALJ was required to discuss them before mechanically discrediting Petitioner due to the treatable nature of his epilepsy.

  b.  *The ALJ's Rejection of PA-C Bishop's Opinion*

Because this case was filed after March 17, 2017, the revised regulations governing the evaluation of medical evidence apply.  20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. §§ 404.1520c(a).  These are: supportability, consistency, relationship to the claimant, specialization, and other factors.  20 C.F.R. §§ 404.1520c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2).  The factor of supportability looks inward at a medical opinions' bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a

**MEMORANDUM DECISION AND ORDER - 14**

medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical

opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  The factor of consistency, on the other

hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more

consistent a medical opinion(s) . . . is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20

C.F.R. § 404.1520c(c)(2).

The ALJ is only required to articulate findings on the remining factors (treatment

relationship, specialization, and any other factors) where "two or more medical opinions . . .

about the same issue are both equally well-supported . . . and consistent with the record . . . but

are not exactly the same."  20 C.F.R. §§ 404.1520c(b)(2)-(3).

The Court reviews the ALJ's persuasiveness determination under these regulations using

the substantial evidence standard.  *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including

the decision to discredit any medical opinion, must simply be supported by substantial

evidence.").[5]

Here, the ALJ provided three reasons for finding PA-C Bishop's opinions unpersuasive.

As above, the primary reason relates to Petitioner's treatment noncompliance.  Specifically, the

ALJ wrote that PA-C Bishop's opinion was "dependent the premise that [Petitioner's] seizures

are not well controlled, a premise not supported by the objective medical evidence, indicating

exacerbations in seizure activity occur when [Petitioner] is not adhering to prescribed medication

therapy and/or is sleep deprived, and are reasonably well controlled on medication adherence and

---

[5] Petitioner originally maintained that ALJs must continue to provide "specific and legitimate"
reasons for discounting the opinions of medical providers.  Pt.'s Br. at 5 (Dkt. 17) and Pt.'s
Reply at 4 (Dkt. 25).  After briefing in this case was complete, the Ninth Circuit rejected this
position.  *Woods*, 32 F.4th at 787 (holding that the "specific and legitimate" standard is
"incompatible" and "clearly irreconcilable" with the revised regulations).

**MEMORANDUM DECISION AND ORDER - 15**

proper sleep hygiene." AR 23 (internal citations omitted). If the records showed that Petitioner's seizures were, in fact, controlled, this would be a legitimate reason for questioning PA-C Bishop's credibility. For the reasons discussed in detail above, however, substantial evidence does not support such a finding. *See supra*, pgs. 11-12.[6]

In the absence of such improvement, the possibility that Petitioner could do a better job controlling his seizures by following his doctor's recommendations is not a rational reason to reject PA-C Bishop's opinions as unreliable. PA-C Bishop acknowledged that Petitioner may be able to work if his seizures were controlled. AR 882. This is completely consistent with the medical evidence cited by the ALJ and with the ALJ's finding that the exacerbations of Petitioner's seizure activity mainly occur when the claimant is not adhering to prescribed medication therapy or is sleep deprived.

The two subsidiary reasons the ALJ provided for rejecting PA-C Bishop's opinion suffer from similar flaws. Without providing much analysis, the ALJ concluded that PA-C Bishop's opinion was inconsistent with Petitioner's daily activities, including his ability to play video games daily. AR 23. This finding is not supported by substantial evidence and is not a rational interpretation of the evidence.

Not all activities of daily living are inconsistent with impairment. *See Fair*, 885 F.2d at 603 ("many home activities are not easily transferable to what may be the more grueling environment of the workplace"); *see also Garrison*, 759 F.3d at 1016 ("impairments that would

---

[6] The ALJ's own citations bolster this conclusion. In rejecting PA-C Bishop's opinions, the ALJ provided <u>nine</u> citations of records showing that Petitioner had "exacerbations" of seizure activity due to missing medication or lack of sleep, but only <u>one</u> citation where Petitioner experienced improvement in seizure activity as a result of medication compliance. AR 23.

MEMORANDUM DECISION AND ORDER - 16

unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day").

PA-C Bishop opined that Petitioner has seizures three to four times a month, which would result in him needing to miss work more than three times a month on average. AR 881, 884. Petitioner's reported activities are not in tension with these limitations. Playing video games, completing household chores, watching television, and doing schoolwork are not activities that conflict with needing to take time off work because one has seizures on a regular basis.[7] Indeed, Petitioner regularly missed school due to his seizures and mental health struggles, and did not graduate from high school until he was 20 years old. AR 41, 50-52, 328, 332, 540.

Finally, the ALJ found that PA-C Bishop's opinion was "internally inconsistent" because she inadvertently checked the box representing that Petitioner's impairments could not be expected to last at least 12 months. AR 23. While this was a valid reason to question the care with which PA-C Bishop filled out the check-box portions of the form, the Court agrees with Petitioner that such a minor mistake was not a rational reason for rejecting the entirety of PA-C Bishop's opinions under the facts of this case. As the ALJ himself recognized, there is ample

---

[7] Respondent cites *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) to support the argument that Petitioner's ability to play video games conflicted with his and PA-C Bishop's testimony about the frequency and severity of his seizures. *Ahearn*, however, involved an ALJ's assessment of a claimant's depression and cognitive impairments. *Id.* at 1116. Here, Petitioner has both cognitive impairments and a seizure disorder. The Court agrees that *Ahearn* supports the conclusion that the ALJ's findings about Petitioner's neurocognitive disorder and learning disabilities were reasonable. Specifically, after considering the medical evidence and Petitioner's activities, the ALJ found that Petitioner's cognitive limitations and learning disabilities did not prevent him from engaging in simple work. AR 20-21. The Court declines, however, to extend the reasoning of *Ahearn* to Petitioner's seizure disorder. It does not follow that playing video games shows that someone does not experience interruptions to their daily activities due to seizures.

MEMORANDUM DECISION AND ORDER - 17

evidence that Petitioner has suffered from epilepsy since childhood.  AR 20.  It is undisputed that PA-C Bishop and her colleague Dr. Wechsler have been treating Petitioner for this condition for years.  AR 426-435, 744-753, 800-805, 859-880.  In these circumstances, it is not reasonable to reject the opinion of a claimant's treating provider based solely on a minor and obvious mistake in filling out a check-box form.

      *c.  Petitioner's Noncompliance as an Independent Basis for Rejecting his Claim*

      The Social Security regulations permit a denial of benefits in certain situations where a claimant fails to comply with prescribed course of treatment.  *See* SSR 18-3p, 2018 WL 4945641 (October 2, 2018) and 20 C.F.R § 416.930(b).  The ALJ's repeated emphasis on Petitioner's treatment noncompliance suggests this was the true reason for the ALJ's decision to deny Petitioner disability benefits.  The ALJ, however, did not follow the required procedure for denying benefits based on a claimant's failure to follow prescribed treatment, which requires, among other things, that the ALJ consider whether the claimant has a "good" reason for failing to follow prescribed treatment.  *See generally* SSR 18-3p (setting forth a multi-step procedure that an ALJ must follow before denying benefits based on failure to follow prescribed treatment). The Court cannot and will not attempt to fill in these gaps.  *Bray*, 554 F.3d at 1225.

II.    <u>Petitioner's Neurocognitive Disorder, Depression, and Other Mental Health Impairments</u>

      Because the ALJ has the discretion to enter new findings on remand regarding the opinions of Dr. Latta and Dr. Daniels and any other aspects of Petitioner's and his mother's testimony, the Court does not address the challenges to these portions of the ALJ's decision.

III.    <u>The Remedy</u>

      When an ALJ's denial of benefits is not supported by the record, district courts possess discretion under 42 U.S.C. § 405(g) to remand for further proceedings or for an award of

**MEMORANDUM DECISION AND ORDER - 18**

benefits. *Treichler*, 775 F.3d at 1099. The proper course turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. In most cases, however, remand for additional investigation or explanation is preferred. *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). Such remands allow for the ALJ to resolve any outstanding issues in the first instance.

In this case, it remains uncertain whether the ALJ would be required to award Petitioner benefits if the errors in the ALJ's treatment of Petitioner's testimony and PA-C Bishop's opinions were corrected. The ALJ reasonably found that Petitioner could control his epilepsy with medication and proper sleep hygiene. Determining whether Petitioner is entitled to benefits despite Petitioner's failure to adhere to his treatment regime depends on the reasons for his noncompliance, something the ALJ did not consider. The Court will, therefore, reverse and remand for further proceedings under the ordinary remand rule. On remand, the ALJ is directed to reevaluate the medical record consistent with this disposition.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 17) are **GRANTED,** and the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: June 27, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**